Oh yay! Oh yay! Oh yay! The Honorable Appellate Court, 5th District, State of Illinois, is now in session. The Honorable Justice Cates presiding, along with Justice Moore and Justice Barberas. The first case this morning is 524-0253, People v. Hill. Arguing for the appellant is Linda Althoff. Arguing for the appellee is Corinne Navarro. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the Clerk of the Court is permitted to record these proceedings today. Good morning, ladies.  As you heard, the Clerk of the Court indicate Justice Barberas is also on your panel, but he's not able to join us this morning. But he will listen to the oral argument, which is available via audio, and read the briefs and prepare just as he would if he were here today. So with that said, Ms. Althoff, do you want to start for the appellant? Sure. Thank you, Your Honors. May it please the Court, Linda Althoff on behalf of Isaac Hill. The State charged Isaac Hill with the death of I.H. through the infliction of blunt trauma. The evidence as to the cause of death was closely balanced as the State and the defense each presented medical experts with contrary conclusions on this question. The State's expert, Dr. Denton, testified that I.H. died from internal injuries due to bleeding of a liver laceration, which resulted from blunt trauma to the abdomen. Dr. Bao testified that I.H. died from viral infections and that the liver laceration was caused from CPR that was performed at the hospital. He also explained that the paleness of the organs was because she suffered from sickle cell disease. It should be, as an initial note, we acknowledge that I.H. came to the hospital in a very emaciated state and in a rough condition, to be honest. But that was not the cause of her death. Mr. Hill was not charged with neglecting or malnourishing I.H. So on appeal, the parties agreed that it was up to the trier fact to determine which expert was more credible as to the cause of death. The issue before this court is whether the prosecutor improperly put its thumb on the scale to sway the court by engaging in improper means of cross-examination to disparage Dr. Bao and tip the scales in favor of crediting Dr. Denton. There are really two main points of contention between these experts. First, how was the liver lacerated and did sickle cell contribute to I.H.'s condition? The appellant's brief highlights three significant improper uses of cross-examination that the prosecutor employed to influence the court to find in its favor. First, the prosecutor injected its own representation and conclusions as to what was presented in medical journals. The prosecutor first referenced the Journal of Pediatric Pathology and told Dr. Bao, as well as the court, that isn't it true that in a case of sickle cell, the spleen will be enlarged? This contradicted Dr. Bao's testimony that the spleen is atrophied when a child suffers from sickle cell. And so this point, again, bolstered Dr. Denton while contradicting Dr. Bao. Is that journal, was that journal recognized by the court or anybody else as an authoritative text? No, and that is, in fact, the basis of our contention. We understand that it can be a proper subject for cross-examination, but here there is no foundation laid for it. And the court take notice of that? The court can take notice of it, but the court did not and the prosecutor did not ask the court to take judicial notice of it. Nor did Dr. Bao concede its accuracy and no other witness expert testified as to the validity of these journals. And so in the second point that the prosecutor made was using the American Journal of Forensic Medicine, that the study of 164 children that underwent CPR, none of them died from CPR related injuries. And although Dr. Bao disagreed with the conclusions that were presented here, the state never perfected its impeachment of Dr. Bao or presented anything to confirm that its representation of what these studies said was, in fact, accurate. Well, it doesn't have to do the back end piece if it's authoritative, does it? It doesn't have to prove the positive if the authoritativeness of the text is recognized. Correct, but here there is no indication that the authoritative nature of this text was recognized. Okay. The next point of the cross-examination that was improper was where the prosecution tried to put improper weight on the scale in favor of Dr. Denton by using yet another expert or its characterization or mischaracterization, as we would say, of Dr. Nelson's testimony, suggesting that Dr. Nelson had treated this child and had said that this child does not have sickle cell disease. But in fact, Dr. Nelson never made a diagnosis, but yet the prosecutor continued to argue with Dr. Bao. Once Dr. Bao said, no, this would not, if Dr. Nelson had made a different diagnosis, this would not have influenced my finding, the prosecutor continued to argue with him. And continued, I know this wouldn't cause a change in your diagnosis, but isn't it true that Dr. Nelson treated this child? You were never in the room with her. Are you saying Dr. Nelson is wrong? And just engaged in this argumentative form to make Dr. Bao look like he was not qualified to make his diagnosis. And in fact, he went on to suggest that his diagnosis was based solely on the fact that the child was African-American. So while elevating Dr. Nelson's conclusion or appearance of a conclusion, I guess, it reduced Dr. Bao's conclusion to a question based basically of race of the child. And although Dr. Bao attempted to clarify his diagnosis of sickle cell disease, the prosecutor further, in closing argument, told the court, disregard when he makes a diagnosis based solely on race, based solely on the fact that she is African-American. You should ignore his, any of his opinion, which in fact was not the sole essence of Dr. Bao's conclusion as to sickle cell. So at this point, we have medical journals and another expert, the appearance of another expert's opinion, which was not in fact accurate. Weighing in favor of Dr. Ben, Dr. Denton and against Dr. Bao. So our final example of the prosecutor's improper cross-examination was its discussion of Dr. Bao's prior history, an incident that occurred 10 years prior where he testified in the high profile Trayvon Martin case. And after that, the defendant was acquitted. Dr. Bao acknowledged that he was asked to resign. The prosecutor exacerbated that in its cross-examination, saying, wasn't this, this is very public firing. It was all over the Internet. It was all over CNN. You were accused of lying on the stand. You changed your testimony from your reports. However, the prosecutor never substantiated these allegations, did not provide any context for what happened in that case. And in fact, it was not relevant at all. Here, there's no allegation that Dr. Bao was motivated to testify falsely. Anything he said or did in the shooting death of a person, his testimony about a shooting death 10 years prior, does not speak to his methodology or his testing in this case. It only insinuated that he was an unscrupulous expert who should not be believed. While also disregarding that he had a 10-year history providing his services as a medical examiner and expert witness on behalf of both the state and the defense in the state of Illinois. Here, in this case, contrary conclusions were presented by two strongly credentialed medical examiners. Each provided explanations for their conclusions. It was up to the prior fact to determine which expert was more credible based on the admissible evidence before it, unswayed by disparaging comments and insinuations made as to one of the experts. Especially in a case here that was closely balanced as to the cause of death. It came down to credibility determination. Ms. Althoff, when you talk about first prong plane error and it being closely balanced, it doesn't have to be closely balanced on the cause of death, does it? It's closely balanced on the case in total. Well, the primary issue and dispute here was the cause of death. And the case in total, I would submit, was the cause of death. That's what the state was required to prove beyond a reasonable doubt. Did Dr. Hill, or Mr. Hill, inflict these injuries on I.H.? The fact that she was emaciated and there were signs of neglect, he was not charged with that as the first degree. And so we would submit that that was not relevant to the cause of death. And really the only other possible circumstantial evidence as to the cause of death would be this text message that occurred between Katrina and Mr. Hill that he was about to blast peanut butter. And again, frustrated parents can say, I want to kill that kid. I'm going to hit that. So we can't take that literally. And also that statement was made over three days before she actually died. He punched her hard enough to cause internal bleeding to lead to her death. It's hard to imagine that it would take over three days. And this was another point of contention that should have been judged by the expert or by the court in a credible manner. I see my time is up, so I will save my remaining comments for rebuttal. Okay. Justice Moore, questions? No questions. Okay. Yes, you will have a few minutes for rebuttal. Ms. Navarro, on behalf of the state. Thank you. May it please the court, counsel, my name is Karen Navarro and I represent the state of Illinois. Defendant appeals following a bench trial where he was convicted of first degree murder. Defendant on appeal raised a singular issue, which is that the prosecutor improperly conducted its cross-examination of the defense expert, Dr. Bao, who was admitted as an expert in the field of forensic pathology. And defendant in the brief concedes that the issue was not preserved for review on appeal and urges the court to review it under the first prong of plain error. Now, under the first prong of plain error, a court may review and consider a forfeited claim where there is a clear or obvious error and where the evidence is closely balanced. The state submits here that neither of those prongs has been established and thus review under plain error is not appropriate. During cross-examination, an expert can be cross-examined to either explain, modify, or discredit the testimony of the expert. In addition, the state can even bring forth weaknesses in the basis of the expert's own opinion. But in order to do that, you have to have an authoritative text. If you're going to cross-examine somebody about a study or something from a textbook, you have to lay the proper foundation. Do you agree with that? Yes, I do agree with that, Your Honor. And in turning to that first issue with which defendant argues that the state did not properly lay the foundation for the studies that it relied on, specifically it relied on a book, which was the pediatric pathology book. And when it did so, it did ask Dr. Bao, who was admitted as an expert in the field of forensic pathology, specifically asked, Dr. Bao was asked, are you familiar with the textbook, the pediatric pathology, and are you aware that it's seen actually as the Bible for forensic pathology for children? Dr. Bao responded in the affirmative, that he was aware of that. And this was even further corroborated when Dr. Bao was asked, and are you familiar that in this field, this book is actually used as a diagnostic manual or textbook? Dr. Bao responded, yes. Here we have an expert in the field of forensic pathology agreeing that this book has been used in the field. It has been relied. He even considered it a diagnostic manual. He's read it. The only thing is that Dr. Bao stated and explained that he disagreed with the contents of the book. Now, this is proper because the state can inquire as to other expert opinions in the field and can ask questions regarding what basis the expert that was currently tested by and used. This includes delving into what opinions did you dismiss or which did you rely on? And that's exactly what the state did here. And Dr. Bao explained and was able to explain, I disagreed because of these reasons. This is what I relied on. So this is why the state believes that here, it did not need to admit the textbook because it wasn't using the contents of the book substantively, but was rather inquiring as to the basis of the expert's opinion. This here is no different than a state being allowed to ask an expert hypothetical questions about additional facts or additional data, whether or not they're in the record, to see if that has any effect or how it would change or alter an expert's opinion. These are all questions that are properly allowed during cross-examination. Similarly here, defendant's second instance of what it considers misconduct is where it states that the state miscategorized the testimony that was presented during the state's case in chief when cross-examining Dr. Bao. Now during the state's case in chief, the state admitted, had two experts admitted. First was the pediatric physician, which attended the victim in this case at the ER. And that expert testified to the conditions in which the victim arrived at the hospital that he reviewed, he looked at the victim, he assessed the victim, he looked at the medical history and did testify that the victim did not have sickle cell. And this was contrary to what Dr. Bao was testifying. And the state merely inquired, does this alternate opinion or alternate fact have any effect or alter your opinion in this case at hand? Dr. Bao explained that it did not. Again, this is something that the state is allowed to do. They are allowed to posit alternative facts and alternative data to see the effect that it has on an expert's testimony. So here in those instances, the state does not believe that it was improper to further delve into what basis the expert used. The third instance of misconduct is what the defense calls an irrelevant questioning into the professional history of the expert witness. And Dr. Bao was admitted as an expert subject to cross-examination. Now, during cross-examination, the state is more than allowed to inquire as to the qualifications, the experiences, motive for testimony, credibility, all of those issues are available to utilize during cross-examination. This is exactly what the state did. The state inquired as to the previous employment of the expert. Now, here specifically, the defense argues that looking at the facts that surrounded Dr. Bao's termination and resignation is what was improper. During the cross-examination, Dr. Bao was asked about his previous resignation, which was 10 years ago. He explained that he was asked to resign following a high-profile case. Now, the state did not in any way delve into the details of the case because that would be irrelevant, but it focused mainly on Dr. Bao's experience and qualifications. Dr. Bao admitted that there was a lot of media coverage. Dr. Bao also denied the fact that he was fired for the reasons that the state said. So, wouldn't it have been incumbent upon the state, since they introduced that topic, to come back and prove that Dr. Bao was not telling the truth? So, even though Dr. Bao denied it, it was not necessary for the state to provide an actual documentation stating the news articles or anything like that. Even in the case that defense cites People v. Bull, it provides that in order to ask these questions, while you can admit the articles, you can also inquire as to the actual witness. And that's actually what the state did. It inquired as to the witness and asked Dr. Bao these questions. Now, whether he disagreed, it wouldn't have been any different had the article actually been admitted. Dr. Bao would have maintained the exact same response of, that was fake news. So here, People v. Bull does allow for either the use of the actual article or to merely inquire with the expert witness themselves, which is exactly what the state did here. This all went towards his credibility, his motive to testify. And while the defense uses People v. Bull to show that prior actions that are too remote or too distinct aren't allowed, such was not the case here. In People v. Bull, that disciplining action was regarding stealing, which the court specifically pointed out doesn't go to the bias and it doesn't go to motive to testify. Here, we're specifically discussing an instance where Dr. Bao's testimony during court was in question, and that goes directly to the bias and motive to testify in this case. And further, I think it's an important distinction to note here that this case proceeded via a bench trial, not a jury trial. As such, that presumption that the court only relied on proper evidence exists, and that presumption is only overcome where there is an affirmative showing. And such, when you review the record, such was not done. There is nothing that affirmatively establishes that the court utilized improper evidence when coming to its determination. Such, the presumption remains and there can be no error. It's clearly established where no error exists, there can be no plain error of review. Now, as we discussed in our brief, the state also submits that this case was not closely balanced when you had two experts testify on behalf of the state that established the conditions of the victim and that both stated that any bleeding that occurred would have occurred prior to the victim arriving in the hospital. Now, just because the expert testified on behalf of the defense differently, it doesn't negate the evidence that was presented in the state's case in chief. It's for these reasons that we submit that plain error of view is not warranted here, and we ask this court to affirm the defendant's convictions. Thank you. Justice Moore, question? No question. Okay. Thank you, Ms. Navarro. Ms. Althoff for the defense? Yes, thank you. As to the substantive points, the state noted that Dr. Bow was merely agreeing that he agreed that this was a diagnostic manual, the Journal of Pediatric Pathology. You are familiar with that? It's a diagnostic manual or textbook. Yes. The next question was that people in your field rely on? No. So he did not concede that it was something that would be relied on by experts in the field. And what manual was that? That was the Pediatric Pathology, which this prosecutor referred to as the Bible for Forensic Pathology for Children. And the state also argued that they didn't bring it in substantively. The prosecutor did ask, don't these journals say that the spleen will be enlarged? And the second instant was, didn't the study conclude that out of 164 children, nobody died from CPR related deaths? That is a substantive representation by the state. As to Dr. Nelson's testimony, Dr. Nelson didn't conclude and couldn't conclude that she had sickle cell. He didn't do any diagnosis or tests. Although he said there had been no prior diagnosis in her medical records, the absence of a prior diagnosis is different than an affirmative diagnosis. And nor did the state address the fact that the prosecutor in the same line of questioning reduced Dr. Bow's testimony to being based solely on the child's race. And treated him as sort of an unscrupulous expert on that basis. As to the third with the professional history, it is unclear how his conduct in the Trayvon Martin case 10 years prior shed any light on his ability to testify in this case. And there's no allegation that he was motivated to testify falsely. It doesn't go to his credibility. It doesn't address his methodology, his testing. And while you can disagree with his conclusion, and the court might have, Trayvon Martin's case is not relevant to anything that went on here. His motive to testify was not in question in any way. Finally, I would like to address that the presumption that this is a bench trial and that we consider that the judge presumes only the proper evidence, or presumes, we presume that the judge considers the proper evidence before it. There are a couple reasons that we should not give that presumption so much weight in this case. First, the trial judge made absolutely no specific findings of fact in this case, in a first-degree murder case of a child where the defendant was facing 20 years. So normally we have some sort of indication as to why a judge, some of the facts that he relied on to demonstrate that he made a proper determination. Here we have nothing. We also know that while the judge took a short recess, there were probably 200, at least 200 pages in the transcript of expert testimony, tedious medical expert testimony that he couldn't have had time to absorb and rely on during a recess. We also know that as to the closely balanced trial, Dr. Denton, and we don't contest that Dr. Denton was called in rebuttal, but it also gave the appearance that the evidence might have been more closely than it was when the trial judge had an opportunity to hear Dr. Denton's testimony twice and his conclusions twice. And while it is true that, you know, we have two experts testify on the side of the state and one on the side of the defense, that is precisely the definition of closely balanced. It is not, we are not suggesting that this was not proven beyond a reasonable doubt, but when you have two conflicting evidence, two conflicting experts or witnesses, that is the definition of a closely balanced case. I still have trouble with the fact that there was testimony from Katrina where she told the investigators that the defendant whooped I.H. and testified that he popped her. And she denied that she said that he whooped her or hurt her in any malicious way. She said she had seen him pop her in the butt, which she, throughout her testimony, treated as something different than like a whooping or beating. And so we would say she, and she denied, so she denied that she had ever told the investigators that he had whooped her or harmed her in any way. And so we would maintain that a judge, just like a juror, is human and can be swayed, improperly swayed at times. And Mr. Hill was entitled to have the assurance that the court would make its credibility determination based solely on the objective evidence before it. So for these reasons, we would ask that this court remand, reverse the conviction and remand for a new trial. I think that concludes the arguments for today. We will take this matter under advisement. We appreciate your efforts in this case. The briefs are well written and we will issue an order in due course. Have a wonderful day. Thank you. You too.